Good morning, may it please the Court. My name is C.B. Kirshner, appearing on behalf of Petitioner Appellant Carlos Noguera. I'd like to reserve one minute for rebuttal. If the State of Nevada had a statutory sexual assault law in 2005, we wouldn't be here. The trial court in this case crafted the jury instructions to compensate for what it believed to be deficient laws. This trial-level judicial activism violated Noguera's right to due process and a fair trial, as did the fact that the jury verdict was a product of a motion rather than legally sufficient evidence. I'd like to start by addressing the uncertified issue, why Jury Instruction 14 was a directed verdict that minimized the State's burden of proof. In the final paragraph of Instruction 14, the trial court told the jury that if Noguera had sex with a minor, and if she was under the age of 14, then they must find him guilty of either sexual assault or lewdness. By taking the element of criminal intent out of the equation, the Court invaded the province of the jury and violated Noguera's right to due process. How did it do that exactly, since she charged correctly on the account that he was convicted? Yes, Your Honor. The jury was properly informed of the elements of sexual assault. However, in Jury Instruction 14, the Court minimized the intent element, discussing over and over again only consent, which wasn't really at issue. I think it's clear from the Court's comments outside the presence of the jury that the judge did not believe that a minor of this age could ever consent and assumed that a jury would feel the same way. Well, that may be true, that that's what he said outside the presence of the jury, but he didn't tell the jury that a minor under the approximately 11, I think she was, you know, barely 11 at most, couldn't consent as a matter of law. Well, actually, he did, but in a separate jury instruction. Actually, in Instructing the Jury on Statutory Sexual Seduction, the language of the Court was, as a matter of law, a person under the age of 16 is incapable of consenting to the above acts, the above acts being intercourse. And I think that is part of the troubling jury instructions as a whole, because it was not clear that that language applied only to that single charge and not to all of the charges being presented to the jury. Additionally, in explaining the difference between sexual assault and lewdness, the Court told the jury that, well, consent is never a defense to lewdness. Again, focusing on consent rather than the element of criminal intent. And — Well, let me understand. This is a habeas case, right? Yes, Your Honor. And so you have to show that there was some violation of clearly established law in connection with this construction. Yes, Your Honor. So what is the principle underlying your issue? What is the law that was violated here? Your Honor, in this case, I would say the applicable U.S. Supreme Court cases are In re Wiship, Sullivan v. Louisiana, and United States v. Martin Linen Supply Company, which collectively stand for the proposition that the State has to prove every element beyond a reasonable doubt, that the Court is not allowed to issue a directed verdict for the State, and most specifically that a directed verdict is one that resolves some or all of the factual elements of the offense charge. And I would submit that in the final paragraph of Instruction 14, when the Court told the jury, look, if there was sex and if the victim was under the age of 14, then he must be guilty of one of these two offenses, not mentioning the element of intent whatsoever, that the Court at that point issued a directed verdict because it resolved the element of intent, which was an issue for the jury to decide. Sotomayor, what was the defense of trial? The defense in trial was a mistaken belief as to capacity to consent. And this defendant in this case requested a jury instruction on that theory of the defense, which the Court refused to give. And that's issue number one before the Court is the error in failing to give that instruction. This Court to explain that. I'm not quite understanding that. The defense was that she did not have the capacity to consent? No, that was the State's argument. Okay. So the defense argument, that's my question. The defense argument was that I think a combination of both. She did, in fact, have the capacity to consent. But even if the jury found she did not, then Mr. Naguera had a reasonable belief, a reasonably perhaps mistaken belief, in her capacity to consent. And he took a jury instruction from a prior Nevada Supreme Court case, Honeycutt v. Nevada, and asked that it be presented. And the language in that case was very much applicable, because the issue there also had to do with the intent element of sexual. Forgive me, but I thought the Honeycutt, there were two aspects to the Nevada statute. One is forcible, which is not what was the theory of the prosecution here. And one was that she was either because of a disability or otherwise, she was either unable or incapable of actually consenting. And the Supreme Court of Nevada said that the charge that you're relying on doesn't apply to the clause in the Nevada statute that he was actually charged with. And that's a construction of State law by the State's highest court. And what do we have under EDPA to how could we possibly ignore that? Your Honor, the real ---- I guess I wouldn't use the term ignore. What I would say is if a careful reading of the Nevada Supreme Court's decision was while saying, yeah, no, he shouldn't have been entitled to this instruction, the Court also went on to say, but the court, the jury could consider that defense. So they didn't say that it was an incorrect statement of law, which is actually the test that this Court set out previously in analyzing the U.S. Supreme Court's case of Matthews. This Court said that a person is entitled to be instructed on the theory of the defense if, one, it's supported by law, and, two, it has some foundation and evidence. The Nevada Supreme Court never said that the requested instruction was not supported by law. The concurring decision actually went on to say, as the majority correctly recognized, this was a correct statement of law, and the Nevada Supreme Court ---- Kennedy, I'm sorry. And the Nevada Supreme Court further recognized as much by saying that it was okay for the jury to consider this defense, even without being given this requested jury instruction. That's not how I read it, but okay. Fair enough. But I would say that that's the test that this Court laid out, and that's how this Court should analyze that, is whether or not the Nevada Supreme Court made a finding that the requested instruction was not supported by law, and no such finding was made. And then finally, the last issue in this case was sufficiency of the evidence, which I think is a very strong issue, Your Honor. Reading the statute, the issue in this case was whether the minor was mentally or physically incapable of resisting or understanding the nature of the conduct. The State presented no evidence that the minor in this case was mentally or physically incapable of resisting or understanding. Quite the contrary. As far as her ability to resist ---- Roberts, just her age. I mean, the jury was certainly entitled to take into account her age, right? The age was one factor for the jury to take into account. Right. But that's you said no evidence. I think that's some evidence and quite compelling evidence, actually, for most citizens who would be called upon to serve on a jury in a case of this sort, no? Yes, Your Honor. And again, I ---- the State relied on a number of cases in its brief, Miller, Graham, Roper, and those progenies, suggesting that no 11-year-old is ever capable of consenting. But that's not what the law was in Nevada at the time of the offense. And the question isn't whether any 11-year-old could ever consent. It's whether this 11-year-old had the ability to resist or to understand. She testified that she wanted to have sex, that she liked my client, was in love with him, considered him her boyfriend. She said, I know that I could have said no at any point, and I believe that this immediately would have ended. I did not say no. I wanted to have sex. So while the ability ---- I think no reasonable jury could conclude that even this 11-year-old was incapable of granting consent. I just ---- it's an argument. I grant you that. But I don't see how you could stand there and say the government put on no evidence whatsoever, and all of these jurors must have been drunk out of their minds to convict  I ---- O'Connell. Your Honor, the evidence also shows that this particular victim testified, I knew about the birds and the bees, I knew why adults have sex, I knew that in order to become pregnant, a woman has to be menstruating, I knew that a man has to ejaculate in order to get a woman pregnant. She even knew what health insurance was and that it meant she could go to a doctor. She understood the nature of the conduct. And the State in this case did not present any psychiatrists, psychologists, or other mental health experts to say that this 11-year-old did not have that capability. You know, I'm still having trouble with what the theory of the defense was. Was the theory of the defense that she consented or that he believed that she had consented? It necessarily had to be both, Your Honor. The sexual assault statute in Nevada has two parts. While the State primarily argued the second part, which is this inability to consent, he was charged under the whole statute. So he both had to have, well, not prove, but the State would have had to prove either that the victim did not, in fact, consent or that she lacked the ability to do so. So your prejudice is that the jury, if told, if instructed, as you say, might have found that she consented? Would have found that she consented and that my client did not know or had any reason to believe that she was incapable of consenting and would have likely returned a verdict on the statutory sexual seduction charge rather than on the sexual assault. Okay. You've exceeded your time. We'll give you a minute for rebuttal. Thank you. Thank you, Your Honor. Let's hear from counsel for the State. Good morning, Your Honors. May it please the Court, Amanda Sage with the Nevada Attorney General's Office on behalf of the respondent appellees in this matter. Two Nevada cases stand for the proposition that in cases outside of forcible rape, so when we're talking about capacity to consent, the proffered instruction that Mr. Naguera wanted to offer as a matter of State law was not available, the first being State v. Honeycutt, the second being his own case on direct appeal, which under Bradshaw's Supreme Court says we have to take that into consideration. And the Nevada Supreme Court was quite clear, it doesn't even take a careful reading of the Supreme Court's decision to reach that conclusion. They say straight from the opinion, while Naguera's full reproduction of the proffered instruction may have offered an appropriate defense in a forcible rape case, it raised an inopposite defense to a charge of non-forcible sexual assault where capacity to consent is distinguished from actual consent. So it was inappropriate in this particular situation. A defendant can offer all sorts of instructions that present correct statements of the law. That doesn't mean that they apply to the facts of his case, and that's what the Supreme Court said here. In a non-forcible rape case, this instruction didn't apply. But wouldn't there be, just as in a forcible rape case, in a case of this sort, wouldn't there be a reasonable mistake as to the victim's capacity to consent? Wouldn't that be a defense? Of course, under the statute, he was able to argue whether he reasonably should have known that she had the capacity to consent. And that argument was available to him.  And trying to jump over that and say that this really was just statutory sexual seduction. And so what the Supreme Court, Nevada Supreme Court, said is when you look at the instructions as a whole, really what his defense was, was this a statutory sexual seduction. He was able to argue that. He was able to conclude that based on what he had available to him, that he didn't know or had no reason to know that she lacked the ability to consent. Roberts. Is the the, I think you're talking about what is in instruction number 4, where it says the perpetrator knows or should know that the minor blah, blah, blah. You're saying that that, there's no daylight between that and a reasonable mistake as to the victim's capacity. It's basically half-dozen to one. I think we're, yeah, we're kind of finally chopping words here. It's basically arguing the same thing. So he was able to get up and say, there was no reason for me to know, to know that she couldn't, or she lacked that capacity to consent because of my experiences with her and her maturity and the things that I observed. He was able to get up and argue all of that. Of course, the jury rejected that. They found that here, we get into the sufficiency of the evidence, that this 11-year-old child, who was an elementary school student at the time, didn't have the capacity to understand the nature of a relationship with an adult, someone who was her mother's ex-boyfriend, who came into her life as a father figure, something that she had lacked her entire life. And when we look at the way that she testified at trial and the sufficiency of the evidence supporting this claim, we have to view it in the context of she was testifying after she had gone through a pregnancy, after she had delivered a child. She had spoken with law enforcement officers about the nature of this case. She had spoken with CPS workers about the nature of this case and what went on and why it was wrong. So her knowledge of what she testified to is, I understand how a baby's made, is coming up after she's gone through all of this and has experienced it. It doesn't really show, or it's not really indicative of what she knew when she first entered this sexual relationship with Mr. Neguera. So we have to kind of view it in that lens of she'd had all this experience prior to trial that would have given her certainly some of that knowledge, but even with all of that experience, she still got on the stand and could not explain to the jury how this even occurred. She said the first sexual encounter is she's in her room doing drawings, and he comes in to look at the drawings, and somehow they just engage in sexual intercourse. She can't explain how it happened. Do you happen to know, I don't know how closely you confer with the trial prosecutor, or maybe were you the trial prosecutor? No, I was not. I didn't think so. Was the victim, like, a highly reluctant witness? She was. And I think one of the things that was noted is that she even refused the DA's offer for transportation to the court. Because that's the sense I got reading her testimony. You're right that it's kind of hard to understand it. Like, how did this happen? Who did what for? I got the sense that she did not want to be there, and she was quite upset that she was being forced to basically put this man that she still cared for quite a lot. So I'm not sure how much we can read into the lack of details or the lack of sophistication in her testimony, because I got the sense that some of that was she knew what was going on, and she did not want to help the prosecution very much. That's certainly true. But we can look at the way she described sexual intercourse. She couldn't even say the word sex. When Ask, Describe, Out happened, she couldn't use the proper terms for sexual organ. She just kept referring to everything as private parts. He put his private parts and my private parts. And so when we're looking at her age and maturity and what she really understood at the time, we can take into consideration some of those things that have nothing to do with whether or not she was reluctant. And it's just her knowledge and her uncomfortable level in discussing these things, which is expected of an elementary school student. Robertson On the sufficiency argument, couldn't a jury say, I don't care how sophisticated this little 11-year-old girl was, I just, in my mind, as a moral matter, whatever, I mean, the jury is the conscience of the community, 11-year-old cannot provide meaningful consent, period. Kennedy She was actually barely 11. She was, yeah, she just turned 11. Kennedy As we did the calculations from her testimony, she might have, might not have even been 11 yet. It's possible this occurred when she was still 10, 11 certainly by the time she got pregnant. It's possible. And under the instructions is what the Nevada court, the Nevada district court instructed the jury. They were able to consider age and maturity. Now, this was kind of the weird part about this law, right, is that it allowed any child to argue, or the defendants argued that any child of any age could consider consent. Now, I don't think anyone would get up and say that a 2-year-old could consent to a sexual relationship with an adult, but that defense is available under this statute. It goes the same with an 11-year-old. As a society, I think we say that 11-year-olds, elementary school students, cannot consent to this type of relationship, no matter what they get on the stand to say, especially when they're getting on the stand and saying this stuff after they've had this adult who is a trusting person in their lives kind of groom them into this relationship. You see the evidence that he was acting as a father figure. He was taking them to church, taking them on family outings, came in as the mother's boyfriend when they break up. Then he starts interacting with the child, the daughter, and, you know, going into his family history and telling him that he was falling in love with her, and really taking advantage of this situation. So, yes, the jury could say, I don't think any 11-year-old could, but certainly in this situation, I think it's supported by the evidence, especially when viewed in the light most favorable to the State, which is what we're providing. And under Nevada law, they are entitled to — that's a factor that they can take into account. Exactly. They can take age, they can take maturity, they can take the relationship, and they were instructed on all of those things. So I don't think this is a close call on the sufficiency of the evidence, especially when you have to view this evidence in the light most favorable to the State. We're not debating the facts here. We're not debating what came out. The debate here is how we should view it. We have to view it in the light most favorable to the State. Well, there's double deference here. There is double deference here. Deference to the jury verdict, and then there's deference to the Nevada court's analysis of the jury verdict. Correct. And even the standard with the Nevada Supreme Court's decision is could any rational juror have reached this decision? So just any one person say, yeah, this 11-year-old could not consent here, and I don't think that that's a reach to get to. I'd like to briefly address, before I run out of time here, the uncertified issue. Of course, just from an outset of making the record, there is still no certificate of appealability on this, so jurisdictionally, it's not quite properly before the Court. But if we were to get to the merits of this issue, I think when you look at Instruction 14, in conjunction with the instruction as a whole, but even just reading the plain language of Instruction 14, it constitutes a correct statement of Nevada law, and nowhere does it say you have to find sexual assault or you have to find lewdness with a minor. The district court and the Nevada Supreme Court both agreed that when you look at the instruction in isolation, it might be confusing to a jury as you read the law, but of course, the law is confusing. If it wasn't, none of us would have jobs, if this was a clear thing. So the law, fortunately, they changed Nevada law. They did change Nevada law. But at the time, the instruction, Instruction 14, was clear of what the jury had to do, and twice it said if you're going to find the jury guilty of sexual assault, these are the elements that you have to find beyond a reasonable doubt. And it listed all of the elements, including the intent element for sexual assault. Then went on to say if you're going to convict, if you find that there was consent and that this victim had the capacity to consent, and you're considering now lewdness, here's what you have to find beyond a reasonable doubt, including the intent element of lewdness, which was that there was intent for sexual gratification when engaging in these lewd acts with the minor. And then it just concluded by saying if the minor was over 14 or if there was no sexual And, of course, you can't convict of either. But under a strict reading of that paragraph, it doesn't say that those are the only ways you can't convict. And you have to read it in conjunction with the two preceding paragraphs that give all of the elements that had to be found beyond a reasonable doubt. Roberts. Can you remind me, did the judge instruct the jurors basically to go in sequential order, like start with sexual assault, and if you convict on that, you stop? And then only then do you go to the next one, or I can't remember how that went. I'm not clear if they instructed on sequential order, but there is an instruction that says if you find him not guilty of sexual assault, you also then need to consider statutory sexual seduction. You can't convict of both. So there was that descriptor that differentiated sexual assault between statutory sexual seduction, excuse me. And then Instruction 14, the one challenged here, essentially did the same thing. You can't convict of sexual assault and lewdness. Here's why, and it explained the difference. Roberts. Thank you, counsel. Let's give a minute for rebuttal for counsel for the Petitioner. The minor victim's lack of maturity is a reason why there should and is now a statutory sexual assault law in Nevada. However, in this case to say that an 11-year-old, really no 11-year-old, can possibly consent to sex is not just as wrong under Nevada law. In Nevada, an 8-year-old can be charged with committing sexual assault. It makes no sense to say that an 8-year-old can form criminal intent to commit sexual assault, but an 11-year-old can never consent to sex. Oh, I disagree with that completely. I mean, I'm not in favor of charging 8-year-olds with murder or something, but consent in this context is pretty much a moral thing as much as anything else, isn't it? And that's why I say, I just — your argument on sufficiency just strikes me as hopeless, because a reasonable juror could say, notwithstanding, you know, how knowledgeable about the birds and the bees this young girl seemed on the stand, she can't. She can't possibly know the full scope of the consequences of having sex with a 22-year-old. And on that basis, whatever ostensible consent she gave could not possibly be meaningful in the way that the law should view it. And that's the end of it. I don't think that we're in a position to say that no juror can make that judgment. It's basically immoral, right? Scalia, didn't the Petitioner, your client himself, he said he didn't feel right about the relationship because of her age, that he asked her to tell the police that he thought she was 15 years old instead of 11, and he admitted to the detectives that he understood what he did was wrong, sleeping with an 11-year-old girl, which takes care of one element of the statute, which is his own state of mind, but it also reflects on what the jury could have considered on, in terms of the victim's understanding. Your Honor, my client did say that. And the simple fact of the matter is that what may be wrong is not always illegal. And at the time, in 2005 in Nevada, there was no statutory sexual assault law. So while he may have felt that it was morally wrong, he may have felt that it was against his religion, and the jury may very well have agreed, the jury is in charge of delivering a verdict based on what the law is, not what they want it to be. And that was the problem with this case, is that the jury did exactly what the judge hoped they would do when he crafted the jury instructions to mimic what the law should be rather than what the law was at the time. Roberts. Thank you, counsel. The case just argued as submitted. Can I ask you one? On your uncertified question, as I read it, I mean, this gets complicated, but your prejudice essentially was that he was deprived of a lesser-included verdict on the least serious count. Yes, Your Honor. But isn't the Supreme Court, the Supreme Court has never clearly held that a defendant is entitled to a lesser-included offense charge. No, but the Supreme Court has held that a person is entitled to have the theory of the defense charged to the jury. Yes, if it's supported by law and evidence. Yes, Your Honor. Thank you, counsel. The case just argued as submitted.
judges: Schroeder, Watford, Korman